GEORGE B. MAGRUDER AND J. A. CARTER, *vs.* GEORGE PE-
TER, EXECUTOR OF DAVID.—*December* 1840.

P. devised as follows—"I wish all my debts to be as speedily paid as possible,
"for which purpose I desire that the tract of land on which D. lives, to-
"gether with all my personal property thereon, may be sold, and applied
"to that purpose; and in aid of that, so much of my city property as may
"be necessary to effect that object," and appointed S , G. and L., executors
of his will. Upon the construction of this will, *it was held*, that the ex-
ecutors of P., whose duty it was to pay the debts of the testator with the
proceeds of sale, had the right at common law to make the sale, and com-
petent power to pass the legal title under the will to the purchaser, upon
payment of the purchase money; that the power to sell in this case, was
given to the executors by implication, and that the trust to apply the pro-
ceeds to the payment of debts, would continue the power in the surviving
executor.

The executors acting under this will, in 1813, sold the real estate to M. for
cash, and on credit as to two-thirds of the purchase money, for which they
received the notes of the purchaser, endorsed, payable in 1815 and 1816.
They gave him a bond of conveyance in 1813, agreeing to put him in pos-
session in 1814, *and upon payment of the whole purchase money to make
him a conveyance.* Possession was accordingly delivered to M. who imme-
diately assigned the bond of conveyance to his two daughters E. and G.
for the payment of $3000, and then to his endorsers on the notes given for
the purchase money of the land, for their indemnity. In 1820, M. be-
came insolvent and petitioned for relief. In his schedule he referred to his
debt due the executors of P., and the land bought from them, *as subject
to a lien,* and conveyed all his estate to a trustee appointed for the benefit of
his creditors. In 1821 the executors obtained judgment at law against M.
alone, for the purchase money; this not being paid, an ejectment was
brought for the land, by the heirs at law of P., to compel payment, which
was ultimately abandoned. And after this, the trustee of M., the insol-
vent debtor, who had held the land from 1820 to 1834, *acting in that char-
acter,* sold and conveyed it to C. the defendant. In 1836, the surviving ex-
ecutor filed his bill against C. and the trustee of M., for a re-sale and pay-
ment of the balance of the purchase money. *Held—*

28    v. 11

Magruder *vs.* Peter.—1840.

1. That the possession of C. and those under whom he claimed, was not adversary.

2. That the vendee M. and those claiming under him, with notice, are to be considered as trustees for the whole or such part of the purchase money as remains unpaid.

3. That as the defendant C. knew he was dealing with and purchasing from the trustee of an insolvent debtor, who had no conveyance of the legal title to the land, a fact of which he was also aware, there was enough to put him upon inquiry into the title, and to affect him with knowledge of the insolvent's schedule, which disclosed the fact of unpaid purchase money and lien on the land, and that therefore C. was not a purchaser without notice.

4. That the lien in this case was not waived by taking notes with endorsers.

5. Prima facia—purchase money is a lien on the land sold, and it lies on the vendee to show the contrary.

6. A reservation of the legal title in the contract of sale, until the full payment of the whole purchase money, is a conclusive manifestation of the vendor's intent not to part with his lien therefor.

7. A purchaser with notice of an outstanding lien for a balance of purchase money unpaid, is liable to be affected by a payment of the sureties for such purchase money to the vendor, who may thereby become substituted to his lien, and competent to enforce it for their indemnity.

8. A loss of vendor's remedy at law, by limitations, to the security he had received from the vendee for the purchase money, will not bar the remedy in equity upon the ground of equitable lien.

9. Lapse of time from 1st January 1816 to 16th March 1836, (the time which intervened between the period when the purchase money was all due and the filing of the bill in this cause,) as creating of a presumption of payment when unexplained, is rebutted by the insolvency of the purchaser and his sureties, and the intervening efforts of the vendor made to recover the purchase money.

10. The assignees of the bond of conveyance or their representatives, are material and necessary parties.

11. The creditors of the insolvent M., are sufficiently protected from the fact, of his trustee being a party to the cause.

12. The act of 1785, ch. 72, sec. 4, does not effect the power of the executors under the will of P., nor does it take away the authority which the executor derives by implication of law.

A sale made by the sheriff under a *fi. fa.* shall stand, although the judgment should be afterwards reversed, for the officer has lawful authority to sell.

How far will inadequacy of price for which a purchase was made, affect a plea of a purchase for valuable consideration, where the purchase was made at public auction, without fraud. Qr.

Where a second purchaser has notice of a vendor's lien for the purchase money due by a prior purchaser, the vendor is under no obligation to attend the second sale to give additional information.

APPEAL from the equity side of *Montgomery* County Court.

The bill in this cause was filed on the 16th March 1836, by *George Peter*, surviving executor of *David Peter*, and alleged that *David Peter* made his last will; that the executors therein named duly qualified, and by the death of *Sarah Peter* and *Leonard H. Johns*, the execution of said will has devolved upon complainant as surviving executor; that in June 1813, in pursuance of said will, the executors, for the purpose of paying the testator's debts, proceeded to sell a certain tract of land, described in the said will as the land on which *Dulin* lived, at public sale, to *George Magruder* since deceased, at, &c., upon the terms set forth in the bond of conveyance given by said executors to said *Magruder;* that he paid one-third of the purchase money, and gave his negotiable promissory notes, endorsed, for the balance, and was by said executors put into possession of the lands so sold; that he wholly failed to pay said notes or any part of them; became insolvent; that a certain *George B. Magruder* was appointed his trustee, to whom he conveyed, according to the provisions of the insolvent laws, his whole estate; that the whole balance of the purchase remains unpaid; that there was no administration on the estate of said *George Magruder*, who died soon after his insolvency; that said *G. B. M.* refused to let complainant re-possess said land, and has lately made a pretended sale of the said land to a certain *Lloyd Magruder* and *John A. Carter*, for some trifling amount, though both he and they well knew the balance of the purchase money had never been paid, and that said *G. B. M.* had no right to sell the same, and could give no title therefor: that the said pretended purchase was made, as your orator is informed, and believes, with the view on the part of the said pretended purchaser, to cut down and sell from the said lands the remaining wood and timber thereon, which had become valuable; that they are now cutting it down, &c.; that complainant is informed and believes, that said *George B. Magruder* hath demanded and received from the *Chesapeake and Ohio Canal Company*, on account of a condemnation, had under the charter of said company, for a certain portion of said

lands taken by the said company, for the construction of said canal.    Prayer for subpœna against *George B. Magruder; Lloyd Magruder; John A. Carter;* and also against *James B. Beverly and wife, William Ramsay and wife, William H. Peter; George H. Peter; James Peter;* heirs at law of testator; for account of timber cut, &c., rents and profits; sale; payment of the balance of the purchase money, and injunction restraining further waste.

The will of *D. Peter,* executed on 30th Nov. 1812, declared:

1. It is my intention, that the proceeds of all my estate shall be vested in my dear wife *Sarah Peter,* for the maintenance and education of my children.

2. I wish all my just debts to be as speedily paid as possible, for which purpose I devise, that the tract of land on which *Dulin* lives, together with all personal property thereon, may be sold and applied to that purpose, and in aid of that, as soon as sales can be effected, so much of my city property as may be necessary to effect that object.

The testator then devised a lot to his son *William;* another to his son *Hamilton;* another to his son *James;* and after some other directions as to education of his children, and distribution of the residue of his estate among his sons and daughters, appointed *Sarah Peter, George Peter* and *Leonard H. Johns* his executors.

The bond of conveyance was as follows: Know all men by these presents, that we *Sarah Peter* the executrix, and *George Peter* and *Leonard H. Johns,* executors of *David Peter,* are held, &c., sealed, &c., 14th August 1813.    Whereas, the above bounden *S., G.* and *L.,* to carry into effect the designs of the deceased *D. P.,* as expressed in his last will and testament, did advertise to be sold at public auction, on the 7th June 1813, the following lands, to wit, &c.    One-third of the purchase money to be paid on the 1st January 1814; one other third to be paid on the 1st January 1815; and the remaining third to be paid on the 1st January 1816; the two last payments to bear interest from the 1st January 1814, the purchaser giving negotiable notes, with approved endorsers, and to

receive possession on the 1st of January 1814. That two of the executors (*G. P.* and *L. H. J.*) there set up the said tracts, to wit, &c., containing about 2,043 acres, and the said *George Magruder* being the highest bidder, the same was struck off to him, at the sum of $10.12½ per acre, amounting in the whole to the sum of $20,687.90, current money. And whereas, the said *G. M.* has since the said 4th day of June, given the following negotiable notes, to wit, bill of exchange, and cash for the sum of $6,895 96⅔ cents, payable at different dates, to wit, &c.; and another note for the sum of $6,895 96⅔ cents, endorsed by *Patrick Magruder*, and payable 1st January 1815, and a similar note endorsed by *Lloyd Magruder*, payable 1st January 1815, and thus complying with the terms of sale.

Now the condition of, &c., is such, that if the above bounden *S. P.* and *L.* shall put the said *G. M.* his, &c., into the peaceable possession of the above premises, on the 1st day of January 1814, on the full and complete payment of the first above mentioned instalment, and do and shall, at any future day, before the payment of the whole, cause to be ascertained by a correct and actual survey of the aforesaid lands, the exact quantity of acres, clear of elder surveys, and shall deduct out of the whole amount of the aforesaid sums, for what may or shall prove deficient, at the rate of $10.12½ per acre, he the said *G. M.*, paying for the excess, if any, at the same rate, and do and shall, upon the full and complete payment of the whole purchase money, convey and make over, by a good and lawful deed, containing a clause of special warranty to the above named *G. M.*, his heirs or assigns, the foregoing tracts or parcels of land, clear of elder surveys, and all incumbrances, then this obligation to be null and void, &c. Signed and sealed.

S. P., G. P. and L. H. J.

The bond of conveyance was endorsed as follows—

"I hereby assign this bond of conveyance to the following persons, being for the within consideration—first, to my daughters *E. S.* and *G. A. M.* for the payment of $,3000, and interest, &c., having paid that sum of their money, being the le-

gacy received of their grand-father's estate, and then to *P.* and *L. Magruder*, being the endorsers of my paper for the within land, when they are released from the said paper, the balance, after paying my daughters $3,000 and interest, to go to my creditors. *August 14th*, 1813. G. M."

On the 10th July 1820, *G. Magruder* petitioned for relief under the insolvent laws of the *District of Columbia.* The schedule which accompanied the petition included, among others, this item—

"Tract of land called *Varanock*, in *Montgomery* county, *Maryland*, containing about 2,044 acres, $40,880—on which is a lien of about $16,000—and among his creditors." *David Peter's* executors 14,000.

On the 5th August 1830, *George B. Magruder* bonded as the trustee of *George Magruder*, the insolvent debtor, under the act of Congress.

The indenture of the 5th August 1820, *G. M.* to *G. B. M.* as an insolvent debtor, conveyed all the grantor's property.

On this bill and exhibits, *Montgomery* county court, (KIL-GOUR, and WILKINSON, A. J.,) on bond being filed, awarded an injunction.

At March 1838, the complainant amended his bill, and dismissed it, as to the heirs of *David Peter*, alleging they were not necessary and proper parties. And also, as to *Lloyd Magruder*, alleging that he had no participation in the sale by *G. B. M.* to *J. A. Carter;* that *G. B. M.* resides out of the jurisdiction of this court, and prayed publication against him as a non-resident.

*J. A. Carter* answered the bill, admitting the will of *D. P.*, the death of two of his executors, the bond of conveyance to *G. M.*—no knowledge "of any, if any lien, which the complainant ever had on said land." That a suit at law for said land, by the heirs and widow of *D. P.* was brought and abandoned, or *non-prossed* by the plaintiffs; that this suit terminated in 1834, and before the land was purchased by this defendant; that he bought, supposing the title of *G. M.* no longer doubtful; that possession had been in *G. M.* and his trustee, since

1813, and more than twenty years receiving rents and profits, before the filing of this bill of complaint; which gives defendant a legal title, whether the said *G. M.* or his trustee ever obtained a title or not, and he pleads and relies on said long continued possession, and to have the full benefit thereof; that he purchased the said land from the trustee, who was then in possession. The answer admitted the insolvency of *G.M.*; that *G. M.* gave his notes for the purchase money; that those notes are barred by limitations before filing of the bill, on which he also relies; that the defendant purchased the land at public sale from *G. B. M.*, after public notice of such sale on the 20th December 1834; that he was the highest bidder, and bid $1,980, which was more than any other person offered; and as much as this defendant believes it to be worth; that he has paid the purchase money, and received a deed, herewith filed, without notice of the pretended claim of the complainant; that complainant had notice of the sale under which defendant bought, and gave no notice of his lien. And cannot therefore, now in equity disturb defendant; that letters of administration were granted on estate of *G. M.;* that damages paid by the canal company, were paid to *G. B. M.*, and not to this defendant; that he is advised that the will of *D. P.*, did not authorize a sale by his executors, and that their pretended sale is not valid, and could give no right to the purchase money. Sale of wood and timber, denied since the filing of the bill; had sold some previously, not anticipating his title would be questioned by any one; he kept no account of it, and is therefore unable to say how much he sold or received; that none has been cut since the injunction was issued.

With this answer was filed the conveyance from *G. B. M.* to *J. A. C.*, of 23rd March 1835, reciting and referring to the conveyance.of 5th August 1820 from *G. M.* to *G. B. M.*, and that it was in trust for the benefit of creditors; also the notice of sale by *G. B. M.* as "by virtue of a deed of trust"— and letters to *G. B. Magruder* as administrator of *G. M.*, dated 18th November 1823.

*G. B. M.* also answered the bill substantially as his co-de-

fendant had answered, and that the sale made to him was fair-
ly and *bona fide* made, and that *G. M.* was solvent for a long
period after his purchase of the executors, and could have paid
if required.

A commission was executed and various proofs taken, which
are sufficiently stated in the opinion of the county court and
of this court, and at December term 1839, the county court
(Dorsey, C. J. and Brewer, A. J.,) passed the following
decree:

"The object of the bill is, to enforce an equitable lien for
the balance of the purchase money of a tract of land, sold by
the executors of *David Peter*, under a supposed power in his
will, to a certain *George Magruder*. *David Peter* died in 1812,
having made a will, which his executors, *Sarah Peter*, *George
Peter* the complainant, and *Leonard H. Johns*, construed as
giving them the power sell a certain tract of land, called in
will, the land on which *Dulin* lives, for the payment of his
debts, and they accordingly advertised the said land, contain-
ing about 2,043¾ acres, for public sale, on the 7th June 1813,
and at that sale *George Magruder* became the purchaser, for
the sum of $20,687.90, it being $10.50 per acre, payable as
stated in the bond of conveyance, and possession of the land
was delivered to him. On 10th July 1820, the notes for the
two-thirds of the purchase money, not being paid, *George Ma-
gruder* petitioned the circuit court in the *District of Columbia*,
for the benefit of the insolvent laws, and in pursuance thereof,
on the 5th August 1820, and by deed recorded also in *Mont-
gomery* county, conveyed all his property to the defendant,
*George B. Magruder*, who was appointed his trustee, and took
possession among the rest of the land in dispute. In his sche-
dule he returns this land (called *Cardirock*) valued at $40,880,
on which he states there is a lien of about $16,000, and re-
turns *David Peter's* executors, as his creditors, for $14,000.

All the residue of his property returned, (not mortgaged for
more than its value,) amounts to little upwards of $4,000,
which appears to be more than quadrupled by claims not ap-
pearing to be otherwise secured.

When suits were brought on these notes given for the purchase money does not appear, but judgments were obtained at March term 1821 of *Montgomery* county court, against *G. M.* subject of course to his discharge under the insolvent law, upon which *fieri facias* were issued, and returned *nulla bona.*

An *ejectment* was subsequently instituted by the devisees of *David Peter* against the trustee, *George B. Magruder,* probably at the instance of the executors, as it may be inferred from the testimony, to compel a payment of the residue of the purchase money, in which suit the plaintiff recovered in the county court; but the Court of Appeals in 1832, reversed the judgment, and remanded the cause by procedendo, but by the neglect of the parties, or their counsel, to appear, the suit was *non-prossed.*

Shortly afterwards the land was re-sold at public sale by the trustee, for the sum of $1,980, and conveyed to *John A. Carter,* one of the defendants, who claims to be a purchaser for valuable consideration, and pleads want of notice of the lien or claim of the complainant, at the time of his purchase, the payment of the purchase money, or the taking of the deed.

The defences made by the answer of *J. A. Carter,* are—

1st. That the executors of *David Peter,* had no right to sell the land, and cannot give a good title.

2nd. That they had ample means of obtaining payment of the purchase money, by resorting to the other property of *George Magruder,* and of his sureties, *Patrick* and *Lloyd Magruder.*

3rd. The staleness of the claim.

4th. The omission of the surviving executor to notify him of his lien.

5th. Limitations of *three* years applied to the notes given for the purchase money.

6th. Limitations of *twenty* years, by adverse possession or lapse of time, during which the executors omitted to prosecute their claims against the defendant, and those under whom he claims, being in possession.

7th. A plea of purchase for a valuable consideration without notice.

The *first* proposition of the defendant, *Carter*, which he considers fatal to the complainant's case, is, that the executors of *David Peter*, had no right to sell the land in dispute; that they cannot therefore give a good title to it, and consequently, that they could not demand a specific performance of their contract, nor, which amounts to the same thing, require a sale of the land to pay the residue of the purchase money.

We cannot accede to this proposition, nor admit the consequence deduced from it.

This question has been before the *Court of Appeals of Maryland*, and the *Supreme Court of the U. S.*   By the latter it is expressly decided, 10 *Peters* 563, that the executors had the power to sell, and although it was argued by the counsel in that case, and seems to have been admitted by the court, that the *Court of Appeals of Maryland*, in 4 *Gill & John.* 323, had decided the reverse, we have carefully examined that case, and do not think, that they have made such a decision; on the contrary, it may be more fairly inferred, from the decision of the court in that case, that it was their opinion, that the executors had the power both to sell, and to convey.

The decision of the court in that case is, that the *legal* estate after the death of *David Peter*, vested in his heirs at law, liable to be divested upon a legal sale of the land under the *second* clause of the will, *a compliance with the terms of sale*, and *payment of the purchase money*, leaving undecided the question, whether a legal sale had been made; for although a legal sale might have been made, yet the legal title remained in the heirs at law, because the terms of sale had not been complied with, nor the purchase money paid.

The court say in their opinion, that the will gave to whomsoever it authorised to sell, a mere *naked power* to sell; that is to say, that it did not give a power coupled with an interest, to wit, the legal estate, 10 *Peters* 564; but they do not say in whom that power was vested.   They quote however, certainly without disapprobation, the doctrine in *Sugd. on Pow.* 167, "that when a testator directs his estate to be sold, without declaring by whom the sale shall be made, if the fund be dis-

tributable by the executors, either for the payment of debts or legacies, he will take a power of sale by implication," and merely say on the other hand, that in *Maryland* a different course has generally been pursued, founded perhaps on the act of 1785, ch. 72. As therefore this question has been decided by the *Supreme Court of the U. S.* to be the law of *Maryland,* and there is at least no conflicting *decision* of the *Court of Appeals,* we consider ourselves bound by the decision of the *Supreme Court,* with which, we also concur in principle.

But if the executors had not originally the power to sell, it would not avail the defendants in the present suit. The land was purchased by *George Magruder,* under whom the defendants claim in 1814, twenty-two years before the filing of the bill, knowing that the executors claimed the power to sell under the will of *David Peter;* he never, during the continuance of his interest, objected to the title which they could give; on the contrary he paid one instalment, continued in possession until 1820, six years afterwards; when he returned it in his schedule as his property, and during the next year, confessed a judgment for the residue of the purchase money. In 1820, his trustee, the defendant, *George B. Magruder,* took possession of the land, and continued in possession until a short time after the termination of the ejectment suit, of said *David Peter's* heirs in 1834, when he sold to the defendant *Carter.* During this time he received a large amount of damages from the *Chesapeake and Ohio Canal Company,* as owner of the land; cut a considerable quantity of wood off of it, and received the rents and profits without making any objection to the title; on the contrary, when the *ejectment* was brought, he rested his defence on the title derived from the executors; *and now,* when possession under this title has been held for twenty years, and that suit being *non-prossed,* no longer threatens to disturb it, and there appears to be no probability of any future disturbance, inasmuch as it has been decided, that the heirs of *David Peter* have no really beneficial interest in the land, only the bare legal title; the beneficial interest being in the creditors, to the payment of whose debts the purchase money is to be

applied.   The defendant, *Magruder*, and  *Carter*, who claims
under him, come too late with their objection.   *Sug. Vend.*
212; and the case in note *h.*

It is contended in the  *second* place, that the complainant
might have had  ample redress at law against *George Magru-
der*, and his sureties, and that it is *laches* in him, that he did
not seek that redress.

Admitting that he was bound to pursue his remedy at law,
no transfer of the legal title having been made, what would it
have availed him?   *George Magruder* became insolvent in
1820, and transferred all his property to a trustee.    There is
no evidence that he acquired any property afterwards, if such
would have been liable; on the contrary the complainant issued
a *fieri facias*, which was returned *nulla bona.*   The only evi-
dence, that he ever had any property, is in  his  schedule, and
of the property contained in that, the greater  part appears to
be mortgaged or incumbered with other liens to its full value;
and the residue is greatly insufficient for the payment  of his
other creditors, who would have been entitled, to throw him
back upon his lien.   *Sug. on Ven.* 551, 2, 3, 4.

As to his sureties,  there is sufficient evidence of the insol-
vency of one, at all times subsequently to the purchase; and
of the other during the greater part of his life, embracing nearly
the whole period of the existence of the complainant's claim.
But why should  the complainant be required to pursue  his
remedies against the sureties; if he had recovered his debt from
them, they would have been entitled by substitution to have
asserted his lien against the land.   *Fergusson vs. Ghieslin*, 4
*Harr. & John.* 522.  A court of equity abhors circuity of action.

It would seem a novelty indeed, to permit *Magruder* or his
trustee, to turn over his  creditors to his sureties, and even  if
the defendant, *Carter*, should establish his claim to the char-
acter of a purchaser for valuable consideration, without notice,
for which he contends, it  is  not perceived that his equity is
superior to that of the sureties.   *Carter's* title moreover is of
a very recent date, and certainly he cannot object it, as *laches*
in the complainant, that he did not pursue his remedy against

the sureties, rather than the property of the principal debtor, before he had assumed his character of purchaser.

The defendants also plead the statute of limitations; adverse possession ; and the staleness of the complainant's claim.

If the lapse of three years were to bar the complainant's claim, then in the case of a mortgage, the mortgagee who took a promissory note, or obligation for the amount of his mortgaged debt, or had a covenant in the mortgage for its payment, would also be barred by the lapse of three or twelve years.

A lien for the payment of purchase money, when the land is *not* conveyed, is fully equivalent to a mortgage. In the one case the creditor takes *a conveyance* of the legal title in land, to secure the payment of his debt. In the other, he *retains* the legal title which he already has, and the vendee has no more right to call upon him to part with it, before the payment of the purchase money, than the mortgagor has to require the mortgagee to release before the payment of the mortgage debt. When the vendor conveys the land, retaining only the title papers, his lien is considered equivalent to an equitable mortgage, *Sugden,* 554. It is surely something more, when he retains the legal title. In this case the vendor expressly stipulated to convey, only upon the payment of the purchase money.

The statute of limitations has never been considered as applying to a mortgage. A mortgagor generally takes a bond, or note for his mortgage debt; sometimes, especially when the debt accrues for the purchase of the mortgaged land itself, he takes additional personal security on the note. There where he fails to pursue his legal remedy on the legal instrument, within the period prescribed by the statute of limitations, he loses the benefit of his additional security; so if he omit to sue on the covenant in the mortgage within that period, he loses what the covenant is intended to give him, a remedy against the person and the other property of the debtor. 1 *Pow. on Mort.* 393. 2 *Con. Rep.* 163; but his mortgage stands upon different ground. He may bring an ejectment for the land to pay himself from the rents and profits, which would not be barred in

three or twelve years, or he may file his bill for a sale, relying *not* upon the covenant, or the note, or the obligation, but upon the pledge, the conveyance of the land to him to secure the payment of the debt. 1 *Pow. on Mort.* 393, 4, 5.      The possession of the mortgagor is the possession of the mortgagee; he is considered the tenant at will of the mortgagee, and therefore his possession can never in strictness be adverse, 1 *Pow.* 398.      It is true, that after many conflicting decisions, it seems to be now settled in *England,* that after a period of twenty years, adopted in analogy to the statute of limitations, the mortgage debt will be presumed to be paid, unless there has been within that time, some payment of interest, or some acknowledgment of the existence of the debt, or other circumstances accounting for the delay. 1 *Pow. on Mort.* 393, 399. *Coote,* 543.

It may be supposed, that a different rule at law, has been adopted in this State, in the case of *Morgan's lessee vs. Davis,* 2 *Harr. & McHenry,* 16, decided in the *General Court.* One of the directions of the court would seem to go to that extent, but the facts of the case did not require it, and the rule is repudiated by the Court of Appeals in the case of *Lamar vs. Jones,* 3 *Harr. & McHenry,* 331.      The court deciding in the latter case, no more than had before been decided in the *English* court, that a presumption would arise, after twenty years in analogy to the statute of limitations, unless there be circumstances to account for the neglect, enumerating some of the circumstances referred to in the *English* cases.

Admitting the analogy between mortgages and liens, where the conveyance is withheld, what are the circumstances in this case, to repel the presumption of payment.

*First.* There is the insolvency of *George Magruder* in 1820, and his admission in his schedule returned, both of the debt and the lien.

*Secondly.* A judgment rendered against him in 1821, for the amount of the two instalments.

*Thirdly.* The ejectment brought at the instance of the executors, to regain the possession of the land, for the purpose of

a re-sale; and the application of *Mr. Key*, the complainant's counsel, both pending, and subsequently to the decision of the *ejectment* case in the *Court of Appeals*, to permit him to re-sell the land for the payment of the purchase money, which was not denied, but rather admitted to be due.

All these circumstances sufficiently account for the delay in filing the present bill, and repel the presumption of payment.

The only remaining question is, whether the defendant, *Carter*, can be considered a purchaser for valuable consideration, without notice of the complainant's claim.

It is unnecessary to consider, whether having only an equitable title, he can be protected against a person having the legal title, for we are of opinion, that he cannot be considered a purchaser for valuable consideration at all.

The consideration which he has paid, is so totally inadequate, as not to entitle him to that character. There seems to be no fixed rule by which the requisite degree of inadequacy can be in all cases ascertained. By the *civil law*, half the value is so considered. *Sug. Vend.* 249, which in one instance, is said to have been adopted in *England;* but here the inadequacy is so gross, that it is unnecessary to seek for a sure general rule. The land sold in 1813 or 1814 for $20,000, valued by *George Magruder* in his schedule in 1820 at $40,000, was purchased by *Carter* in 1834 for not quite $2,000—less than one-tenth of the amount of former sale, without any evidence to show a depreciation.

It is clear also, that he had sufficient notice of the non-payment of the purchase money. We know that he purchased from *G. B. M.,* the trustee of an insolvent debtor, who had no conveyance of the legal title, and he was bound to have examined the trust deed, and the insolvent record, the last of which would have informed him, that this land was incumbered with a lien. But it appears moreover, from his written admission, that before he purchased, he had read the decision of the *Court of Appeals*, in the case of *Magruder vs. Peter's devisees,* from 4 *Gill. & John.* 323, and that record, even the opinion of the court, would have informed him explicitly, that

part of the purchase money was yet due.    Having already
notice to that extent, the complainant could not be required
to attend the sale by the trustee, for the purpose of giving him
notice, even if he knew that it was about to take place, (which
is not sufficiently proved,) and could have supposed that a sale
unincumbered with the lien, would have been attempted.

The complainant is entitled to a decree for the sale of the
land; and against G. B. M. the trustee, for an account and
payment of the compensation or damages received from the
*Canal Company*, for its passage through the land; but is not
entitled to an account for the rents and profits.    The vendor
is entitled to interest, the vendee to profits; and there is no
lien upon them. The complainant is also entitled to an account
against the trustee of the general trust fund; and to the pay-
ment of his proportion of it, if the proceeds of the sale of the
land, and the damages received from the *Canal Company*,
should prove to be insufficient for the payment of his claim.

It is therefore this 1st day of February 1839, by *M. County
Court*, &c., ordered and decreed, "that the property in the pro-
ceedings mentioned, be sold for the payment of the residue of
the purchase money thereof, and interest due to the complain-
ant; that *I. D.* be appointed trustee, &c.; that the defendant
*G. B. M.* account with the complainant for the amount re-
ceived by him from the *Chesapeake and Ohio Canal Company*,
as damages or compensation for the passage of the said canal
through said land, with interest, and that he pay the same
to him, in case the nett proceeds of the sale of the property
hereby decreed to be sold, should be insufficient for the pay-
ment to him, of the residue of the said purchase money, and
interest, and that the said *G. B. M.* also account with the
complainant for, and pay over to him, his proportion of the
general assets of the insolvent *G. M.* of whom he was the
trustee, in case the nett proceeds of the sale of said property,
and the damages or compensation received as aforesaid, from
the said canal company, should be insufficient for the payment
of the residue of the said purchase money, and interest, and
that the said *George B. Magruder* and *J. A. Carter*, pay the
costs of this suit, &c.

From which decree the defendants appealed to this court.

The cause was argued before STEPHEN, ARCHER, and CHAMBERS, J.

A. C. MAGRUDER for the appellants, contended—

1st. That the assignees of the bond of conveyance ought to have been made parties. *Magruder et al, vs. Peter*, 4 *Gill & John.* 330.

2nd. That the land, if rightfully decreed to be sold, ought to have been charged with the re-payment to *Carter* of the money paid by him, and to pay only the balance due, after receiving from the trustee the money which he received from the canal company, and the money which he got for wood and timber sold off the land, and the proportion of the other funds in the hands of the trustees, to which the executors of *David Peter* were entitled. That the funds in the hands of the trustee, arising from the land, was the primary, and not an auxiliary fund for the payment of the purchase money.

3rd. That before the passage of the act of 1785, chap. 72, sec. 4, there could have been no sale of the land without the appointment of a trustee. *Peter vs. Beverly*, 10 *Peters*, 563. *Magruder et al, vs. Peter. et al*, 4 *Gill & John.* 323, 329. *Act of* 1831, *chap.* 315.

4th. That if by the law then (before 1785) existing, the executors could have made the sale, the act of Assembly would have repealed such law; as otherwise, the trustee under the decree, and the executors under the will, could each of them have made sale. The executor would not have been hindered from making the sale by a decree, to which he was no party.

5th. The plaintiff *Carter*, being a purchaser for a valuable consideration, without notice, having paid the purchase money, and having obtained a deed of the possession from the trustee who had the possession, was entitled to the protection of a court of equity, and his plea, founded on those circumstances, ought to have been sustained. The court had no right to assume that the price paid by *Carter* was much less than the value of the land, and therefore, not a valuable consideration.

6th. The above circumstances, coupled with the uninter-rupted possession for more than twenty years, (*as is admitted,*) were a bar to any suit at law, and of course in equity. 4 *Kent Com.* 146. 2 *Sto. Eq.* 475, 476. 1 *Mason*, 192. 2 *Sto.* 464. *See* 1218.

7th. According to the bill of complaint, the balance of the purchase money was secured by notes, and upon the notes, the bill does not charge that suits were brought; the plaintiff in error relies on the plea of limitations, and insists, that if the re-medy at law, for the recovery of the purchase money is gone, the vendor can have no remedy in equity on any supposed lien.

8th. There are short copies of judgment filed, not however, that they were for the purchase money; and if they were, they are above twelve years standing. It is not true, that *fi. fas.* were issued and returned *nulla bona.*

9th. The defendant in error, by remaining silent, and suffer-ing the land to be sold, without giving any notice of his claim, forfeited all claim in equity which he might otherwise have had against the land, after the sale of it; and although possibly, he might still claim the purchase money in the hands of the trustee.

10th. The lien was displaced or waived, by the agreement to take notes, with endorsers, and the receiving of such notes for the amount of the purchase money.

11th. It is not shown that the vendors are without remedy at law—that the money was not and could not be recovered on the notes.

12th. The heirs at law of *D. Peter* ought to have been made parties, and if any sale, their interest, as well as that of the parties, should have been sold.

J. Johnson for the appellees.

In support of this decree, the appellee will insist upon the following positions—

1. That under the will of *David Peter*, his executors were authorised to make sale of the land in question; the proceeds being, together with the personal estate of the testator, distri-butable by his executors in payment of debts. *Sug. on Pow.* 133. 16 *Law Lib.* 72.

2. That if originally, the executors had no power to sell, the appellants, under the circumstances of this case, are precluded at this time from making the objection. *Bumpus vs. Planter,* 1 *John. C. R.* 213, 218. *Abbott vs. Allen,* 2 *John. C. R.* 521, 523. *Sug. on Vend.* 346, 347, 348. *Governeur vs. Elmondorf,* 5 *John. C. R.* 79.

3. That if as a general rule, the vendor of real estate must exhaust his legal remedy before he can have recourse to Chancery for relief, the fact of his having done so sufficiently appears in this case; or at all events, it is evident he had no available legal remedy, and that he could only recover the unpaid purchase money by enforcing his equitable lien. *Pratt vs. Van Wyck,* 6 *Gill & John.* 495. *Ghiselin et al, vs. Worthington* 4 *Harr. & John.* 522. *Wright vs. Woodland,* 10 *Gill & John.* 387, *and Green vs. Fowler, ante June* 1840.

4. That *Carter* was neither a purchaser for a valuable consideration, nor a purchaser without notice; but that he had full notice in fact and by construction, that the purchase money due the plaintiff had not been paid; and that the gross inadequacy of the price paid by him deprives him of all pretensions to be considered a purchaser for a valuable consideration. 1 *Sto. Eq.* 388, 392.

5. That having bought the property with notice, and paid a price greatly beneath its value, he has no right to have the same refunded to him; the more especially, as it appears by his answer, that he has sold wood taken from the land for which he has rendered no account.

6. That the vendor being entitled to proceed specifically against the land for the payment of the purchase money, is authorised to look to it as the primary fund for that purpose—that he cannot be thrown upon any fund in the trustee's hands derived from the canal company, or from any other source, particularly, for the relief of a purchaser with notice, and at a greatly under value. 1 *Sto. Eq.* 530, 563.

7. That the act of limitations is no bar to a bill filed by a vendor retaining the title, to enforce his lien for the purchase money, and that the circumstances of the case are abundantly

sufficient to repel the presumption of payment arising from the lapse of time. *Watkins vs. Harwood*, 2 *Gill & John.* 307. *Lamar vs. Jones*, 3 *Harr. & McH.* 331. *Ang. on Lim.* 111, 112, 113. 11 *Mass. R.* 125. *Callis vs. Tolson*, 6 *Gill & John.* 80. *Kane vs. Bloodgood*, 7 *John. C. R.* 116. *Spears vs. Hartly*, 3 *Esp.* 81.

8. That it was not necessary to make the assignees of the bond of conveyance parties. *Gould vs. Newman*, 6 *Mass.* 239. *Act of* 1818, *chap.* 193, *sec.* 14. *Sto. Eq. Plead.* 178, 179. *Elmondorf vs. Taylor*, 10 *Wheat.* 152.

On the question of waiver of lien the counsel cited—*Schnebly and Lewis vs. Ragan*, 7 *Gill & John.* 125. *Stafford vs. Van Renselaer*, 9 *Cowen*, 316, 318.

F. S. KEY also for the appellee—

This court will enforce the obligations of the parties arising from contract. The bond of conveyance contains the contract: its terms are there specified. The title was to remain as it was originally. The contract on one side is fully executed—on payment of the balance of the purchase money, the executors are to make a conveyance. The purchaser becomes insolvent, and his schedule enumerates the property and admits the lien, which the court will enforce. *Powell on Mort.* 392. The barring of the debt by limitations will not exonerate the lien. 2 *Sto. Eq.* 737, 739. *Carter* purchased from an insolvent and a trustee. The rule of *caveat emptor* applies. 1 *John. C. C.* 566, and he had notice from various facts.

As to the executors right to sell, the will is a peculiar one. It directs land and personalty to be sold for payment of debts. This is a power to an executor, and the act of 1785 does not apply.

As to defect of parties, there are others whom the complainants might have made parties without error, but was not bound so to do. The assignees of the bond of conveyance, have they such an interest, as to make them necessary parties? 1 *Sto. Eq.* 175. 2 *Bro. C. R.* 20. 1 *Sto. Eq.* 149, 150. *Elmondorf vs. Taylor*, 10 *Wheat.* 152. *Finly vs. Bank U. S.*, 11 *Wheat.* 304.

A. C. Magruder in reply cited—13 *Law Lib.* 37. *Sug. Law Vendors* 150. 2 *Sto. Eq.* 375, 477 *note.* *Foulk vs. Anderson* 2 *Harr. & Gill.*

Stephen, J., delivered the opinion of this court.

The bill of complaint in this case, was filed on the equity side of *Montgomery* county court by the complainant, as the surviving executor of the will of *David Peter*, deceased, against the appellants, to compel payment of the balance of the purchase money, of a tract of land sold by the executors of said *Peter* to a certain *George Magruder*, under a power supposed by them to be derived from the will of said *Peter.*

The clause of the will under which the executors acted, is in the following words: "I wish all my debts to be as speedily paid as possible, for which purpose, I desire that the tract of land on which *Dulin* lives, together with all personal property thereon, may be sold, and applied to that purpose; and in aid of that, as soon as sales can be effected, so much of my city property as may be necessary to effect that object." He then appointed his wife *Sarah Peter*, executrix, and *George Peter* and *Leonard H. Johns* the executors of said will. The testator died in 1812; and in the following year the executors advertised the land for sale; at which sale, a certain *George Magruder* became the purchaser for the sum of $20,687.90, it being at the rate of $10.50 per acre; one-third of the purchase money, which was by the terms of sale to be paid on the 1st of January 1814, was paid by the purchaser; and for the other two thirds, he gave his two several promissory notes, payable, one on the 1st of January 1815, and the other on the 1st of January 1816. The *first* endorsed by *Patrick Magruder*, and the *second* endorsed by *Lloyd Magruder*, when possession of the land was delivered to him, as the purchaser thereof. In July 1820, and before the payment of either of the above notes, *George Magruder* petitioned in the *District of Columbia* for the benefit of the insolvent laws; *Geo. B. Magruder*, one of the defendants, was appointed in the same year, his trustee, to whom he conveyed all his property, including the land purchased by the insol-

vent, his principal, from the executors of the said *David Peter.* This land was afterwards sold at public sale by the trustee of *George Magruder,* and purchased by *John A. Carter,* one of the defendants, for the sum of $1,980, to whom it was conveyed by the said trustee, and who resists the sale of the said land, for the payment of the balance of the purchase money due to the estate of the said *David Peter,* deceased, upon several grounds, the validity of which it is necessary for this court now to examine, and decide upon.

The defendant contends in the *first* place, that it was without warrant or authority, that the sale was made by the executors of *David Peter,* and that the making of such sale being the exercise of a power not delegated to them by the will, no title passed to the purchaser at such sale.

He also contends, that he was a purchaser for valuable consideration, without notice of the complainant's lien or claim, for the balance of the purchase money, and that the same might have been obtained by due diligence, and taking the necessary steps for that purpose, from *George Magruder,* the principal, or his sureties, *Patrick* and *Lloyd Magruder.*

He further relies upon the staleness of the demand, and the omission of the surviving executors to notify him of his lien.

He pleads limitations as a bar to any claim upon the notes for the purchase money; and limitations by adverse possession of twenty years, and lapse of time, during which the executors suffered their claim to lie dormant, and omitted to prosecute for the same, either against the defendant, or those under whom he claims, they being in possession.

The objection raised to the power of the executors to sell, and which is relied upon as matter of defence in this case, is an important one; and has received all the attention and consideration, which it has been in our power to bestow upon it.

The same question it appears, has also engaged the attention of the *Supreme Court of the United States,* and has been judicially decided by them in favour of the right or power to sell.

We do not however agree in opinion with that learned

court, that this court in the case reported in 4 *Gill & John.*
323, have expressed any decided opinion upon this question.
In that case the Court of Appeals, say it is said in *Sugd. on
Pow.* 167, where a testator directs his estate to be sold, with-
out declaring by whom the sale shall be made, if the fund be
distributable by the executor, either for the payment of debts
or legacies, he will take a power of sale by implication.   In
*Maryland* a different course has been generally pursued, found-
ed perhaps on an act of Assembly, passed in 1785, ch. 72, by
the 4th section of which it is enacted, "if any person hath
"died or shall die, leaving real or personal estate to be sold
"for the payment of debts, or other purposes, and shall not
"by will or other instrument of writing, appoint a person or
"persons, to sell or convey the said property, &c., upon every
"such case, the Chancellor shall have full power and authority
"upon application or petition, from any person or persons inter-
"ested in the sale of such property, to appoint such trustee or
"trustees, for the purpose of selling and conveying such proper-
"ty, and applying the money arising from the sale, to the pur-
"pose intended, as the Chancellor shall in his discretion think
"proper."

We shall certainly look here in vain, for any thing like the
expression or intimation of an opinion, that the doctrine quoted
from *Sugden* was untenable, or unsustainable upon principle.
It amounts to nothing more than a declaration or statement,
that in this *State* a different practice in such cases had been
generally pursued, which probably had its origin in the pro-
visions of the act of 1785, ch. 72.   It cannot therefore we
think be properly considered as a decision of the question in-
volved in this case, which must be decided upon principle
and authority, uncontrolled by any thing which fell from the
court in that opinion.   If then, no binding judicial decision
of the question has ever been made by the tribunals of this
State, or if the act of Assembly has never been judicially con-
strued to cover and extend to such a case, it becomes necessary
to ascertain what is the doctrine of the *English* law upon such
a subject, as settled and established by the courts of justice

in that country, and to be governed in our decision of the question, conformably to such rules and principles as we shall find to be there established.

In *Sugd. on Pow.* 72, it is said, "it sometimes happens, that a testator directs his estates to be sold for certain purposes, without declaring by whom the sale shall be made. In the absence of such a declaration, if the fund be distributable by the executor, he will have the power by implication." In the same page of the same book, an old case referred to in 16 *Eliz.* where a man devised his lands, "to his wife for life, and because he was in doubt, whether he should have issue or not, he further willed by his will, that if he should not have any issue by his wife, that then, after the death of his wife, the lands should be sold, and the money thereof coming, distributed to three of his blood, and made his wife and another his executors, and died. The executors proved the will. The other executors died, and the wife sold the lands; and it was the opinion of *Wray* and *Southgate,* justices, that the sale was good, although it be not expressed in the will, by whom the land should be sold, for the monies coming of the sale, are to be distributed by his executors to persons certain as legatees, and it appertains to executors to pay the legacies, and therefore they shall sell, &c., as if a man willeth that his lands shall be sold, and that the monies coming thereof, shall be disposed of for the payment of his debts, now the executors shall sell the lands, for to them it belongs to pay debts; also they hold that the lands should be sold, in the life of the wife, otherwise they could never be sold, and also the surviving executor shall sell the lands because the authority doth survive."

Such appears to have been the well settled doctrine of the ancient law of that country, from whence we have derived most of the principles of our jurisprudence, and the modern decisions and elementary writers, recognise the continuance of its existence down to the present period. The same principle has been sanctioned and established, not only by the *Supreme Court of the United States,* but by the decisions of several of our sister States. See 2 *John. Ch. Rep.* 252, where

*Chancellor Kent* says, in a case where the real estate was directed to be sold, but 'no person was named in the will to make the sale. "The object of the power to sell, was to raise money for the legacies, which it is of course the duty of the executor to discharge."

We are therefore of opinion in this case, that the executors of *Peter*, whose duty it was to pay the debts of the testator, with the proceeds of sale, had the right to make the sale, and competent power to pass the legal title under the will to the purchaser, upon payment of the purchase money. See 7 *John. C. Rep.* 48, where *Chancellor Kent* says, it is a well founded principle, that where a person takes by execution of a power, he takes under the authority of the power, equally as if the power, and the instrument executing the power, had been incorporated in one instrument. The title rests upon the act creating the power, and takes effect, as if created by the original deed. Assuming the principle then to be correct, that a power to sell in this case, was given to the executors by implication, it is clear, that the trust imposed upon them to apply the proceeds to the payment of the testator's debts, would continue the power in the surviving executor. In the case of *Osgood vs. Franklin*, reported in 2 *John's. C. Rep.*, *Chancellor Kent* holds the doctrine to be, that where a trust is imposed upon executors, the execution of which depends upon the sale, the power will survive to the surviving executor. In that case he refers to a case reported in *Sir Wm. Jones*, 352, and *Cro. Car.* 382, where lands were devised to the wife for life, and then to be sold by the executors for payment of debts and legacies, or as one of the reports of the case says, to be divided among the nephews, one of the executors died, and it was held, on a case sent from Chancery for the opinion of the judges at law, that the survivor could sell, though the executors had an authority and no interest. It is also a matter worthy of consideration, that by affirming the power of executors to sell, in such cases, the titles of purchasers might be protected in many instances, which a contrary construction would totally annihilate; because in many cases, sales may have been made by

executors, without the aid of Chancery, under the belief of a power derived from the will, which would be totally void, and inoperative, if it should be decided, that it was an assumption of power unwarranted by law, and that an application to Chancery for the appointment of a trustee was necessary; on the contrary, purchasers from trustees appointed by Chancery in such cases, would have nothing to fear; because the *exercise* of such a power would be within the general jurisdiction of that court, and therefore the titles of purchasers under such a sanction, could not be impeached.   Upon the principle, that a sale made under the authority of a judgment of a court of competent jurisdiction is good and valid, it is well settled that a sale made by a sheriff by force of a *fi. fa.* shall stand, although the judgment should be afterwards reversed; for, say the books, the sheriff who made the sale had lawful authority to sell; *Manning's case*, 8 *Coke*, 746.   The purchaser under the decree in this case, would acquire a good and sufficient title from the trustee, upon the payment of the purchase money, and taking a deed of conveyance from him.

To obviate any misapprehension which may arise from the principles contained in this opinion, we wish it to be distinctly understood, that we do not mean to say, that we deem the act of 1785, ch. 72, unnecessary and inoperative; because there may be cases where the jurisdiction of a Court of Chancery, might be properly invoked under that act, as in the case of a will directing the sale of real or personal estate, for the payment of debts or other purposes, and where no trustee was appointed to make the said sale, and no executor was appointed, to whom the power could be considered as given by implication.   In such a case, and perhaps in many others, the aid of a court of equity might be necessary, to execute the provisions of the will, by appointing a trustee to make the sale.   But in the case now before this court, we think that a resort to that jurisdiction was not necessary, as the executor named in the will had the power by implication.

We do not think, that the length of possession of the defendant *Carter*, and those under whom he claims, can be avail-

able as a defence against the complainant's claim in this case; such possession cannot be considered *adversary*, because the principle is well established, that the vendee, and those claiming under him with notice, are to be considered as trustees, for the whole or any part of the purchase money, which may remain unpaid. 1 *John. C. Rep.* 308.

To obviate the objection of the defendant *Carter*, as to a want of power in the executors to sell and transfer the title, other reasons might be assigned, such as the exercise of acts of ownership, acquiescence, and long possession ; but it is deemed unnecessary to say more upon that part of his defence.

That he was a purchaser of the land in question for a valuable consideration, and without notice of the complainant's lien, is another ground of defence assumed by him, to show that it cannot be sold to pay the balance of the purchase money. The general rule of Chancery is, that whatever is sufficient to put the party upon enquiry, is good notice in equity. See *Fonblanque's Equity*, 447, and the cases there referred to in the note. See also *Sug. on Vend.* 542, where he says, "what is sufficient to put a purchaser upon an enquiry is good notice; that is, where a man has sufficient information to lead him to a fact, he shall be deemed conusant of it. Therefore, if a man knows that the legal estate is in a third person, at the time he purchases, he is bound to take notice, what the trust is. Were there not strong and pregnant circumstances in this case, sufficient to put the defendant *Carter*, upon such an enquiry as would have led to a knowledge of the complainant's lien, and which ought to charge him with a knowledge of its existence? He purchased from the trustee of the insolvent debtor, who purchased from *Peter's* executors. The land mentioned in the bond of conveyance to *Magruder*, the purchaser, from the executors, is the same land purchased by him from the trustee of *Magruder*, and he, in his insolvent schedule, returns the land, by a name somewhat variant, though sufficient to put him on enquiry, as subject to a lien of about $16,000, and in his list of debts, he returns himself a debtor to *Peter's* executors, in the sum of $14,000: no legal title had been obtained by the

purchaser or his trustee, for the land purchased, which the bond of conveyance shews, was not to be made, until the whole purchase money was paid; *Carter*, the defendant, admits, that before he purchased, he had read the decision of the Court of Appeals, reported in 4 *Gill & John.* of *Magruder* against *Peter's* devisees, in which it appeared, that the whole of the purchase money had not been paid; the knowledge of this fact, also, at the time of his purchase, was sufficient to have put him on enquiry; and to charge him with notice; that the purchase money then remained unpaid.   Having therefore in legal construction sufficient notice to destroy the effect of his plea of a purchase without notice, we shall forbear to express any opinion upon the inadequacy of the price, for which the purchase was made, and how far the same would operate to effect his plea, as a purchaser for valuable consideration; the purchase having been made at public auction, and no proof of fraud appearing to effect the purchase.   The notice of the lien being sufficient, with which he was chargeable in equity, we think the complainant was under no obligation to give him any additional information upon that subject.

We do not think, that it can be contended with any semblance of propriety, that the lien for the purchase money has been waived in this case, by the taking of promissory notes, with endorsers, as security for their payment.   *Prima facie,* the purchase money is a lien on the land sold, and it lies on the vendee to shew the contrary.  1 *John. C. Rep.* 308, *Chancellor Kent,* in that case says, it is a well settled rule (for which he refers to several authorities,) "that the vendor has a lien on the estate for the purchase money, while the estate is in the hands of the vendee, and when there is no contract, that the lien by implication was not intended to be reserved."   So far from there being any evidence of an intention to relinguish the lien, in this case, the proof is very strong and clear to the contrary.  The legal title was not transferred to the purchaser; and by the express terms of the contract, as proved by the bond of conveyance, no deed was to be executed by the vendors to the vendee, until the full and complete payment of the

whole purchase money." This reservation of the legal title until the full payment of the whole purchase money, is a clear and conclusive manifestation of the vendor's intention, not to abandon their lien for the purchase money, and to take as a substitute therefor, the promissory note of the purchaser, with endorsers. This position is we think too self-evident, upon principle, to require the aid of authorities to support it.

As the evidence in the record shews the inability of both principle and sureties to pay the debt, at and from the period the second payment became due in January 1815, a resort to law could not in any event be available; moreover, if compulsory measures had been adopted against sureties for the attainment of that object, it would have availed nothing to the defendant, *Carter*, as a purchaser with notice, because the sureties, upon paying the balance of the purchase money, would have had a right by substitution to the benefit of the vendor's lien, for the purpose of re-imbursement and indemnity. See the case of *Ghiselin vs. Fergusson*, 4 *Harr. & John.* 522, where the rights of the sureties paying the debt of the principal, in such a case are fully recognised.

As to the plea of limitations, and the lapse of time upon which the defendant *Carter*, relies, we think they are unavailable to him as a defence against the complainant's claim, under the circumstances of this case. Although the plea of limitations would bar a recovery on the note, yet the loss of the remedy on this note, it is clear, would not bar the complainant's remedy in equity, upon the ground of his equitable lien. In the case of a mortgage, the law seems to be so understood. See 1 *Powell on mortgage*, 393, where it is said, "if the collateral security had been a note of hand, instead of a bond, the statute of limitations would run against the note, and leave that mortgage as it was."

As to the lapse of time which intervened between the period when the debt became due, and the filing of the complainant's bill, we are of opinion, that the presumption of payment, which might have arisen from that circumstance, when unexplained, is sufficiently rebutted by the insolvency, or em-

barrassed condition of the purchaser and his sureties; and the efforts which were made to recover it, being sufficiently apparent from the proof in the case, that one of the objects, if not the primary one, of the *ejectment suit*, was to subject the land by a sale to the payment of the balance of the purchase money.    In the *law compendium*, page 361, it is said, "lapse of time is permitted in equity to defeat an acknowledged right on the ground, only, of its affording evidence of a presumption that such right has been abandoned; it therefore never prevails, when such presumption is out-weighed by opposite facts, or circumstances," for which principle the author refers to the case of *Wilson vs. Carrington*, 4 *Munf.* 332.

But for as much as it appears to this court, that the assignees of the bond of conveyance, the two daughters of *George Magruder*, and *Patrick Magruder*, and *Lloyd Magruder*, also assignees of the said bond, by reason of their eventual responsibility, if the fund should prove insufficient, are material and necessary parties to this suit, we are of opinion, that the cause should be remanded to *Montgomery* county court, sitting as a court of equity, in order that they, or their legal representatives, if they be dead, may be made parties to the same.    As to the creditors of the said *George Magruder*, mentioned in the said assignment, their interests, are, we think, sufficiently protected, by the trustee of the said *George*, who is already a party to this suit.    This cause is remanded accordingly, in order that the proper parties may be made to the same; the appellees are to pay the costs of the appeal.

CAUSE REMANDED TO MAKE PARTIES WITH COSTS

TO THE APPELLANTS.