*(* Decided January 22nd, 1863.)

---

THOMAS H. SMOOT AND OTHERS, *vs.* WILLIAM REA AND STEPHEN ANDREWS.

It is well settled, that the specific execution of a contract in equity, is a matter "not of absolute right in the party, but of sound discretion in the Court."

Where a contract respecting real property is in its nature and circumstances unobjectionable, it is as much a matter of course for Courts of Equity to decree specific performance of it, as it is for a Court of Law to give damages for a breach of it; and in general, Courts of Equity will decree a

Smoot, *et al.*, *vs.* Rea & Andrews.

specific performance where the contract is in writing, and is certain, and is fair in all its parts, and is for an adequate consideration, and capable of being performed.

Where, by the terms of a contract for the sale of real estate, the vendor, A, acknowledged the receipt of money, the assignment of paper, and the acceptance of the note of B, the vendee, for the balance of the purchase money *as payment*, and agreed to execute a deed of conveyance *when demanded*,—the collection of the paper assigned, and the actual payment of the note not being made conditions precedent to the conveyance of the title,—such contract is plain, explicit and unobjectionable, and its specific performance will be decreed. Where there has not been a strict legal compliance with the terms of the contract, and the non-compliance does not go to the essence of the contract, relief will be granted.

Where, in case of a contract as above stated, A, the vendor, in his answer to a bill for specific performance, admits his failure to convey *on demand*, and assigns as the ground of such failure, the delay or omission of B, the vendee, to pay to him the amount of a certain judgment not included in the terms of the contract, but alleged in said answer to be a lien on the real estate—HELD: that such matter being new and not responsive to the allegations of the bill, and not supported by proof, is no ground for denying to the complainants the relief prayed.

To entitle a purchaser to demand a deed, it is sufficient that he is ready and offers to comply with the contract on his part, and has the ability to perform it.

Where A, the vendor in the aforesaid contract of sale, resells said real estate, and executes a deed of the same to the second purchaser, C, professing to act as the agent of the original vendee, B, under verbal authority, and that of letters subsequently written, which, in fact, do not authorize such resale and conveyance, such letters must be taken as the only proper source of authority, and the purchaser, C, being shown to be aware of the contents of such letters, though he may be mistaken as to their legal effect, and aware also of the terms of the original contracts, cannot claim to be protected as a *bona fide* purchaser without notice.

It is well settled, that what is sufficient to put a purchaser on inquiry, is good notice; that is, where a man has sufficient information to lead him to a fact, he shall be deemed conusant of it.

C having purchased with notice of the previous contract of sale, he is subject to the equities between the original vendor and the complainants. In such case, he is to be treated as a trustee of the first vendee; he stands upon the same footing as his vendor, and will be decreed to convey in the same manner as the original vendor, under whom he claims.

APPEAL from the Circuit Court for Dorchester county.

The bill in this case was filed on the 19th of October 1852, by the appellant against the appellees, for the purpose of obtaining an injunction to stay the prosecution of an action of ejectment, instituted by the appellee, Andrews, against the appellant, and also for the specific performance of a contract for the sale of real estate by the appellee, Rea, to the appellant, and to obtain a conveyance of the lands purchased. The material allegations of the bill and answers, and the testimony in the case, are stated in the opinion of this Court.

At the final hearing, the Court below (SPENCE, J.) refused to grant the relief prayed, and passed a decree dismissing the bill, from which this appeal was taken.

The cause was argued before BOWIE,. C. J., and BARTOL and COCHRAN, J.

*O. Miller,* for the appellant:

The contract of sale from Rea to Thos. H. Smoot, of the 1st of January 1844, was for a valuable consideration, and is, in equity, considered as performed, and all the consequences follow as if a conveyance had been made at the time to the vendee. 1 *Madd. Ch.,* 363. 2 *Story's Eq.,* secs. 790, 1212, 771, 772, 775, 776, 784, 789. *Hampson vs. Edelen,* 2 *H. & J.,* 64. The original contract is admitted, and there never was any waiver of it between the parties, and if there was, or any verbal variation of the contract, they are not sufficient to prevent the execution of the original agreement. 1 .*Madd. Ch.,* 407, 408. 2 *Story's 'Eq.,* sec. 767. *Poe, Garn., vs. Duck,* 5 *Md. Rep.,* 6. *Winn & Ross vs. Albert,* 2 *Md. Ch. Dec.,* 169. Rea was no party to the contract of division between the Smoots, no mutuality of agreement existed between him and Thos. H. Smoot, which would make a tender of the balance of purchase money on

the part of Thomas Smoot, of any avail. And if Rea, having knowledge of the contract of division, was bound to recognize it, that recognition bound him to convey to both, when both should call for a specific performance. *Duvall vs. Myers*, 2 *Md. Ch. Dec.*, 401. The putting Thomas H. Smoot in possession of the land, his continuing in possession, renting and letting portions of it, and cutting wood with the full knowledge of Rea, the vendor, was such a part performance as forever bound Rea and those claiming from him to a specific performance. 1 *Madd. Ch.*, 380, 381. 2 *Story's Eq.*, 761, 763, 775, 776, 784. *Owings vs. Baldwin*, 1 *Md. Ch. Dec.*, 120. Same case, 8 *Gill*, 338.

Rea had no authority to deed to Andrews, and if he had from Thomas Smoot, the father, authority to sell, in view of the division between the Smoots, to which division he was no party, yet he was bound, as any other agent or as trustee for Thomas Smoot, to observe the restrictions and limitations of the authority, especially as he knew Thomas Smoot, the father, had sold part of his tract to Willin, and wished to reserve the house and lot at the ferry for his children, and had limited him to the price he was to ask for the balance. 1 *Story's Eq.*, 134, 141. *Owings vs. Nicholson*, 4 *H. & J.*, 66. *Maclier vs. Wergman*, *Id.*, 579. *City Bank of Baltimore vs. Bateman*, 7 *H. & J.*, 104.

The tender to Rea, made by Thomas H. Smoot, was in every respect sufficient and good, being qualified by no terms except such as the original agreement called for, viz: the execution of a deed. If this be so, then the opinion of the Court below is, that a specific performance was imperative. Andrews had sufficient notice of the sale to Thos. H. Smoot to put him on inquiry. 1 *Story's Eq.*, secs. 399 to 401. The Court ought to have decreed, according to its own views, a specific performance by the execution of a deed to Thomas H. Smoot of the three tracts, "Rehoboth," they being paid for, and not claimed by any one but the

purchaser, and Thomas H. Smoot's right being undisputed. 2 *Story's Eq.*, 747, 751.

*Daniel E. Henry*, for the appellees:

The contract of division between Thomas H. Smoot and Thomas Smoot, of the 9th of October 1847, was a waiver of the original contract of sale from Rea to Thomas H. Smoot, of the 1st of January 1844, which Rea, as a privy, was equally bound to recognize. The complainants cannot claim a conveyance from Rea, because they have not shown a performance on their part of the contract thus modified, or a tender equivalent to performance, and a continuing offer to perform. 1 *Madd. Ch.*, 407. 2 *Story's Eq.*, 776. *King vs. Hamilton*, 4 *Peters*, 311. *Legal vs. Miller*, 2 *Ves.*, 299. *Milward vs. Earl Thanet*, 5 *Ves.*, *Jr.*, 720. *Alley vs. Deschamps*, 13 *Ves.*, *Jr.*, 228.

Rea had authority and right to sell. Express oral authority from Thomas Smoot himself, and express written authority in his letters. Oral authority is sufficient. *Ch. on Cont.*, 196, and *note.* 5 *Vin. Abr.*, 524. *Coles vs. Trecothick*, 9 *Ves.*, 234, 250. *Mortlock vs. Buller*, 10 *Ves.*, *Jr.*, 311. *Lawrence vs. Taylor*, 5 *Hill*, *N. Y.*, 107. But Rea was not a mere agent for the sale of the property; he held the legal title to it, and an equitable lien upon it, for the unpaid balance of the purchase money, and upon the failure of the Smoots to pay said balance after repeated demands, he had the right to sell independent of his express authority. *Hatch vs. Cobb*, 4 *Johns. Ch. Rep.*, 559. *Kempshall vs. Stone*, 5 *Id.*, 193. The title of Andrews is good. There is no testimony to raise even a suspicion of fraud on his part. *Spindler, et al., vs. Atkinson*, 3 *Md. Rep.*, 422. If the equities are equal, the legal title will prevail. 2 *Story's Eq.*, secs. 769, 766. *Todd vs. Gee*, 17 *Ves.*, *Jr.*, 273.

(*Mem.*—The arguments on both sides, on the questions of fraud and inadequacy of price, being immaterial, in the

view of the case taken in the opinion of this Court, have been omitted.)

BARTOL, J., delivered the opinion of this Court:

The proceedings in this case show that in the year 1843, William Rea purchased at sheriff's sale the lands of Thomas Smoot, and on the 1st day of January 1844, contracted to sell the same lands to his son, Thomas H. Smoot, one of the complainants, for the sum of $721.75. This contract was in writing, endorsed on the sheriff's deed, and signed by Rea, who therein acknowledged the payment by Thomas H. Smoot of "$313.01 in paper, $58.74 in cash, and Thomas H. Smoot's note for $350, which when paid will be in full." The deed was to be given when demanded, or so soon as the District Court should determine Rea's title ; and if it was not good, the paper and money to be refunded. The lands consisted of three tracts or parcels called "Rehoboth," one containing 107 acres, one containing 29 acres, and one containing 89 acres ;. a tract or parcel called "Conclusion," containing 143½ acres, and a house and lot at "Crotcher's Ferry."

On the 18th day of February 1847, Thomas H. Smoot sold to his father one-half the lands so purchased; and on the 9th day of October 1847, a contract was entered into between Thomas Smoot, the father, and Thomas H. Smoot, the son, whereby it was agreed that the lands should be divided between them, and that "Rea should convey the same when paid for" as follows, viz. The three parcels called "Rehoboth" to Thomas H. Smoot, and the parcel called "Conclusion" and the house and lot at "Crotcher's Ferry" to Thomas Smoot. This agreement was written, and attested by the defendant, Rea.

On the 19th day of June 1851, William Rea sold and conveyed the land called "Conclusion" and the house and lot at the ferry to Stephen Andrews, one of the respond-

ents, who instituted an action of ejectment to obtain possession thereof; whereupon the original bill in this case was filed by Thomas H. Smoot, for the purpose of obtaining an injunction to stay the prosecution of the action of ejectment, and for the purpose of enforcing a. specific performance of the contract entered into on the 1st day of January 1844, and to obtain a conveyance of the lands purchased.

The injunction was granted as prayed, but was afterwards dissolved. And it being considered that Thomas Smoot (the father) was, by reason of his interest, a necessary and proper party to the cause, and he having died, an amended bill was filed, by leave of the Court, making his widow and heirs at law parties complainants with Thomas H. Smoot, claiming a conveyance of the land in execution of the original contract of the 1st day of January 1844, and in accordance with the contract made between Thomas Smoot and Thomas H. Smoot, on the 9th day of October 1847.

At the final hearing, the Circuit Court refused to grant the relief prayed, and passed a decree dismissing the bill. From that decree this appeal was taken.

The bill charges fraudulent combination between the defendants, Rea and Andrews, in the sale and conveyance made by the former to the latter, on the 10th day of June 1851, and asks that the deed of that date shall be declared null and void. It is also charged that the property conveyed to Andrews was sold at a grossly inadequate price, far below its real value; and a great deal of the evidence taken under the commission was intended, and has been relied upon in the argument, for the purpose of establishing these charges.

In the view which we have taken of the case, however, it is quite immaterial to decide whether the price paid by Andrews was or was not a fair and adequate price for the

land. Nor do we conceive it at all necessary to the support of the complainants' case, to establish actual fraud in the transaction between the respondents, Rea and Andrews. In our opinion, the testimony in the cause is not inconsistent with the fact, that Rea acted in good faith in selling the land to Andrews, believing he had the power to sell, and that Andrews made the purchase in like good faith, under the same belief. But notwithstanding the absence of intentional fraud, an examination of the pleadings and evidence in the cause has brought us to the conclusion that there is error in the decree of the Circuit Court, and that the complainants are entitled to have a specific performance of the contract of the 1st of January 1844, as modified by the agreement of the 9th of October 1847.

It is well settled, that the specific execution of a contract in equity is a matter "not of absolute right in the party, but of sound discretion in the Court." 2 *Story's Equity*, secs. 742, 769. Yet the same author says, *sec.* 751, "Where, indeed, a contract respecting real property is in its nature and circumstances unobjectionable, it is as much a *matter* of course for Courts of Equity to decree a specific performance of it, as it is for a Court of Law to give damages for a breach of it. And, in general, it may be stated that Courts of Equity will decree a specific performance where the contract is in writing, and is certain, and is fair in all its parts, and is for an adequate consideration, and is capable of being performed."

The contract of sale in this case, made on the 1st day of January 1844, is plain, explicit and unobjectionable. By its terms, the vendor acknowledged the receipt of the money, the paper assigned, and the note, *as payment,* and agreed to execute the deed of conveyance *"when demanded."* The collection of the paper assigned, and the actual payment of the note were not made conditions precedent to the conveyance of the title. This appears also from de-

fendants exhibit K, in which Rea says, "I will deed when called on to do so." But even if we are to construe the agreement made between the Smoots, in October 1847, (attested by Rea,) and the other acts and declarations of the parties, as so far modifying the original contract as to entitle the vendor to require the payment of the balance of the purchase money before executing a deed; still, in our opinion, the case is one in which the complainants are equitably entitled to relief. The respondent's "exhibit K" shows that the paper assigned by Thomas H. Smoot, in part payment of the purchase money, was all collected. The bill alleges that the sum of $220 had been paid on account of the note for $350; and the answer of Rea admits the receipt of that sum "on the purchase," but claims to apply it in part to the payment of another claim against Thomas Smoot, the elder, alleged to be a lien on the land. The nature and character of that claim, and the evidence by which it is sought to be established, will be more fully considered hereafter. For the present, it is sufficient to say, that it is not proved to have been a lien on the land, nor is there any sufficient evidence to show that either Thomas Smoot or Thomas H. Smoot consented to such application. The result is, therefore, that the complainants are entitled to have the payment of $220 applied in reduction of the note of $350, given for the purchase money of the land, leaving of the principal only the sum of $130 unpaid. We do not consider the lapse of time in this case, after the purchase money was due, as a sufficient bar to the relief claimed. For although Courts of Equity will not grant relief to suitors where there has been gross laches or neglect, even "if there has not been a strict legal compliance with the terms of the contract, and the non-compliance does not go to the essence of the contract, relief will be granted." 2 *Story's Eq.*, sec. 771.

It is also well settled, that time is not generally deemed

in equity as of the essence of the contract. The note, in this case, was payable in three years, and was not due till the 1st day of January 1847. It does not appear when the sum of $220 was paid. But the proceedings show that Rea, the vendor, claimed the payment not only of the balance of purchase money agreed on in the contract of sale, but also an old debt of Thomas Smoot, senior, existing before his bankruptcy, and alleged to be a lien on the land, before he was willing to execute a deed conveying the title. If this claim is unsupported by proof, and he had no right to insist on its payment as a condition precedent to executing a deed; it would be inequitable to allow him to urge the delay of the vendees, or their failure and omission to comply with his demand, as a ground for denying to them the relief prayed.

We shall now proceed to examine that claim. Rea, in his answer, says: "This respondent further admits, that he has received two hundred and twenty dollars on the purchase, which he applied to the said note, and a judgment which will be more particularly described hereafter." In a subsequent part of the answer, he says: "Your respondent admits that no deed was executed or proposed to be executed by him to the complainant, for the property mentioned in the said contract of sale, and it is also true that your respondent would have been unwilling to execute any deed, because not only was there a large part of the purchase money due, but subsequently to my purchase of the said property at sheriff's sale, and about the time of the execution of the said contract of sale with the complainant, James A. Stewart, esquire, attorney for one Wallace Kirkwood, and Jane, his wife, and others, recovered judgments against Thomas Smoot, the father of the complainant, and against your respondent, as executor of a certain William S. Harper, who was surety for said Smoot for the amounts specified in a certified copy of said

judgments herewith filed, marked exhibit H, and which your respondent prays may be considered as a part of his answer, and which judgments Mr. Stewart assured your respondent was a part of the original purchase money of the land, and which the said Thomas Smoot and the complainant told your respondent to pay, and add into the purchase money due from the complainant, and they would pay your respondent; and upon the faith of their declaration, your respondent charged the same in the administration of said Harper's estate. Your respondent begs leave to state that this is the judgment mentioned in the first part of your respondent's answer.''

This is all new matter, not responsive to the allegations of the bill, put in issue by the replication, and ought to have been supported by proof. No such proof is to be found in the record. Exhibit H, filed with the answer, does not show what were the causes of action on which the judgments were rendered, nor that Thomas Smoot was the principal debtor, as alleged, nor that the debt was a lien upon the lands; and there is no evidence in the record of these facts. The allegation in the answer, that Thomas Smoot and Thomas H. Smoot agreed that the amount of those judgments should be added to the purchase money, and that they would pay them, is wholly unsupported by any testimony in the cause. In the letter of Thomas Smoot, dated October 14th, 1850, (respondent's exhibit L,) he says: ''And if there is any claim that was due before my bankruptcy, that has a bearing upon the lands, when paid he (Thomas H. Smoot) must by all means pay his equal part.''

This could not bind Thomas H. Smoot, or affect his rights in any way; and even as regards Thomas Smoot, it shows only that Rea was claiming something beyond the purchase money originally agreed on, as a lien on the land; but it cannot be construed as any admission of the

particular judgments described in "exhibit H," or any agreement to pay them as part of the purchase money. In the agreement for a division of the land made between Thomas Smoot and Thomas H. Smoot, on the 9th day of October 1847, which was drawn and attested by Rea, no mention is made of any other sum to be paid for the land except the purchase money named in the original contract of purchase; and that agreement was made long after the judgments in question had been recovered, and after they had been paid by Rea, as Harper's executor.

It follows, from what has been said, that the complainants are not bound to pay any thing more than the balance of the purchase money due under the contract of the 1st day of January 1844, after applying the credit as before stated. This balance, according to the testimony of Mr. Griswold, the complainant's solicitor, was tendered to the respondent, Rea, on the 4th day of November 1851, by Thomas H. Smoot, and a deed demanded. The amount so tendered was $139.

As the note for $350 is not produced, and there is nothing to shew whether it bore interest from date, or whether the interest had been paid, this Court cannot determine whether the amount so tendered was the real sum due. Mr. Griswold says it was the true balance as ascertained by him, but does not furnish the data of his calculation. It appears from his statement that Rea made no objection to the amount offered, except to say that he claimed the payment of another debt due from Thomas Smoot, senior.

We do not concur with the Judge of the Circuit Court, in the opinion that this tender was insufficient, because it was accompanied with a demand for a deed of the land, when Thomas H. Smoot, by his contract with his father, was entitled only to a deed of a part of the land. This objection does not appear to have been made by Rea at the time, nor do we think it has any force now. In such cases

the technical rules governing pleas of tender in actions at law, are inapplicable. To entitle a purchaser to demand a deed, it is sufficient that he is ready and offers to comply with the contract on his part, and has the ability to perform it. And although Thomas Smoot could not rightfully claim a deed of that part of the land sold to his father, there was no equitable ground for refusing to sign a deed conveying to him those parcels called "Rehoboth," which were included in his original purchase, and to which, by the subsequent contract of the 9th of October 1847, he was entitled, on payment of the balance of the purchase money.

We shall next proceed to consider whether Thomas Smoot, senior, or the complainants, on whom his rights have devolved, are entitled to claim a conveyance of the other parcels called "Conclusion," and the house and lot at "Crotcher's Ferry," notwithstanding the sale and conveyance by Rea to Andrews of the 10th of June 1851. The determination of this part of the case depends upon the decision of two questions:

First. Whether Rea was authorized and empowered by Thomas Smoot, senior, to make the sale?

And secondly. Whether Andrews is entitled to protection as a *bona fide* purchaser, without notice of the contract between Rea and Smoot?

1st. The authority of Rea to sell, was derived only from Thomas Smoot's letters exhibited in the cause dated May the 6th and 31st, and October 14th 1850.

In Rea's answer to the original bill, he refers to these letters as the evidence of his authority to sell. He says: "Your respondent, to show his authority to sell the said property allotted to said Thomas Smoot, the father, begs leave to refer your honor to letters of said Smoot, herewith filed, marked exhibit M and N, together with exhibit L, and which are prayed to be considered parts of this, his

answer, urging your respondent to an early sale and adjustment of the matter; and although it may be inferred from the tenor of some one of said letters, that he was limited in the selling price of said property, yet your respondent felt himself fully justified, from the general tenor thereof, and the remote prospect of obtaining his claim otherwise, to sell the same for the purpose aforesaid, and did sell the same in good faith.''

Andrews, in his answer, states that at the time of his purchase, Rea informed him that he (Rea) ''had full power and authority from Thomas Smoot (the father of complainant) to sell and convey the said property, and read to this deponent parts of letters from the said Thomas Smoot, from which it appears that the said Rea had full power and authority to sell and convey the said property purchased by this defendant, as aforesaid.''

It is true that the defendant, Rea, in his answer to the amended bill, and in his testimony claims to have derived his authority to sell from conversations with Thomas Smoot. But what those conversations were, does not distinctly appear. It clearly appears, however, from other facts and circumstances in the cause, that they must have taken place before the letters were written, to which we have referred, and whatever verbal authority may have been given before, (even if a verbal authority in such case would suffice,) must be held as revoked or qualified by the terms of the letters themselves. Upon these letters, therefore, and upon them alone depended Rea's authority; and, in our opinion, they conferred no power to make the sale of the 10th of June 1851. On this point they are very plain and explicit in their terms, give no power whatever to sell the house and lot at the ferry, and authorise the sale of the tract called ''Conclusion,'' provided he can obtain $500 for it. Rea sold the whole, including the house and lot, to Andrews for $375. The conclusion is therefore irresistible, that

Rea misunderstood his authority, and made the sale to Andrews without being empowered to do so by Smoot.

2nd. As to the rights of Andrews. We are clearly of opinion that he cannot claim to be protected as a *bona fide* purchaser without notice.

Apart from the testimony of Rea, who says, "I have very little doubt that he (Andrews) knew all the circumstances of the sale to Thomas H. Smoot, and the division between the Smoots," Andrews, in his answer, states that he was informed by Rea of the contract of division between Thomas Smoot and Thomas H. Smoot, and in his deed from Rea, the land conveyed is described as the property "which Rea had contracted to sell to Thomas Smoot, senior, and by authority of Smoot hereby resold."

With these facts before us, it is impossible to say that Andrews stands in the position of a *bona fide* purchaser without notice. It is well settled, that "what is sufficient to put a purchaser on inquiry, is good notice, that is, where a man has sufficient information to lead him to a fact, he shall be deemed conusant of it." *Magruder vs. Peter*, 11 *G. & J.*, 243. *Price vs. McDonald*, 1 *Md. Rep.*, 419. Many other authorities might be cited to the same effect.

Andrews having purchased with notice of the previous contract of sale, he is subject to the equities existing between Rea and the complainants. In such case, he is to be treated as a trustee of the first vendee; he stands upon the same equity as his vendor, and will be decreed to convey in the same manner as the original vendor under whom he claims. See 2 *Story's Eq.*, sec. 784.

Upon considering the whole case, this Court is of opinion that the complainants are entitled to relief, and will sign a decree reversing the decree of the Circuit Court and remanding the cause, in order that an account may be taken to ascertain the balance of purchase money due upon the contract of the 1st day of January 1844, after applying as

Williamson, *et al.*, *vs.* Mayor & C. C. of Balto.

a credit thereon the sum of $220, the payment of which has been established by proof, and to the end that a decree may be passed requiring the respondents, upon the payment of said balance, or its being brought into Court within a reasonable time to be named in the decree, to unite in proper deeds conveying to the complainants the lands purchased, as they may be respectively entitled under the original contract of the 1st day of January 1844, and the subsequent contract of the 9th day of October 1847, and as heirs and representatives of Thomas Smoot, deceased, in accordance with the opinion of this Court.

*Decree reversed and cause remanded.*

(Decided January 23rd, 1863.)