MARY E. MYERS, EXECUTRIX OF CHARLES MYERS, DECEASED, *vs.* JAMES S. FORBES AND EDWARD R. SPARKS, SHERIFF.

SPECIFIC PERFORMANCE OF CONTRACT.—The term or duration of a lease is an essential part of it, and in the absence of any stipulation in that respect, a Court of Equity cannot decree a specific performance of a contract to lease.

*Quaere?* Whether it is possible to supply such a defect in the written paper by parol evidence?

APPEAL from the Circuit Court of Baltimore City.

The appellant filed her bill in the Circuit Court for Baltimore City, alleging as follows :

" That your oratrix's late husband, Charles Myers, her now testator, in his life time, to wit: on the twenty-eighth day of November, 1860, entered into a contract with a certain James S. Forbes, carpenter of said city, to do and perform the carpenter's work in and about a certain warehouse which he, the said Charles Myers, was at that time about to build, at the corner of South street and Exchange Place in said city ; that by the terms of said contract, he, the said Charles Myers, agreed to pay the said Forbes a certain price, for the doing and executing of said carpenter's work at its completion, provided the said Forbes took and received from said Charles Myers a lease of certain lots of ground on the east side of Spring street in said city, as will more fully appear by reference to said contract herewith filed, marked complainant's exhibit M. E. M., No. 1, and prayed to be taken as a part of this bill.

"Your oratrix further shows, that the said Charles Myers has departed this life leaving a last will and testament, and appointing your oratrix sole executrix thereof, and that letters testamentary have been issued by the Orphans' Court of Baltimore city, on said estate to her, as will more fully appear by reference to complainant's exhibit M. E. M. No. 2, and that said property at the corner of South

street and Exchange Place, (which is leasehold property,) is now in her possession as executrix as aforesaid.

"Your oratrix further shows, that said Charles Myers in his life time often requested said Forbes to comply with the terms of his said contract, and execute and receive said lease, as specified in said contract, but that he refused so to do. Your oratrix further shows, that said carpenter's work on said building, has long since been completed, and that said Forbes has filed with the clerk of the Superior Court of Baltimore city, a mechanic's lien for the whole amount of the same on which there is now due the sum of four hundred and three dollars and sixty-nine cents, which sum your oratrix, as executrix as aforesaid, has tendered to the said Forbes, and offered to pay him on his executing and receiving said leases, as set forth and agreed in said contract herewith filed, which leases have been drawn and actually executed by the said Charles Myers, and your oratrix as his wife, in the life time of the said Charles. But yet, so it is, that although said Forbes admits that said sum of $403.69, is the entire amount due him under said contract, and said lien, he refuses to execute said leases and receive said sum, as he is bound in law and equity to do, but has issued to the next September term of the said Superior Court *scire facias* on said mechanic's lien, and the Sheriff of Baltimore City is about to advertise the said property, by way of giving the notice required by the mechanic's lien law of the State of Maryland, although your oratrix has made said tender to said Forbes which she here again repeats and offers to pay him on his executing said leases and complying with the terms of said contract, said sum which is the entire amount he claims to be due him by virtue of said contract, all of which is contrary to equity and good conscience on the part of said Forbes, and to the manifest injury of your oratrix, and in violation of her rights. The bill then prays that the said James S.

Forbes, and his agents and servants, and particularly the Sheriff of Baltimore City, may be restrained from further proceeding in said *scire facias* on said mechanic's lien, and from advertising said notice under said lien law ; and that said James S. Forbes may be compelled to execute and receive said leases of said lots, and that your oratrix may have a specific performance of said contract, and for general relief. The contract referred to as marked M. E. M., No. 1, is set forth in the opinion of this Court.''

On the foregoing bill an injunction was issued, and the defendant filed his answer, after which a commission was issued to take testimony, the substance of which as far as it bears upon the questions passed on in this Court is stated in the opinion of this Court.

The Court below, (ALEXANDER, J.,) passed an order dissolving the injunction and dismissing the bill, and from this order the present appeal is taken.

This cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*B. F. Horwitz* for the appellant.

It is submitted that this being a contract respecting real estate and being in writing, certain, fair in all its parts, for an adequate consideration and capable of execution, that a Court of Equity will decree its specific performance ; which is as much a matter of course as for a Court of law to give damages for a breach of it ; and *especially* as there was an entire performance of the contract on the part of the appellant's testator. *Smoot vs. Rea,* 19 *Md. Rep.,* 398. *Story's Equity Jurisprudence,* secs. 722 *and* 751. *Furnival vs. Crew,* 3 *Atkyns,* 87. *Williams vs. Mayor of Annapolis,* 6 *H. & J.,* 529, *and see page* 533. *Sullivan vs. Tuck,* 1 *Md. Ch. Dec.,* 59, 63. *Tritton vs. Foote,* 2

*Brown's Ch. Rep.*, 636. *Russell vs. Davison*, 2 *Brown's Ch. Rep.*, 639, *note*. *Leading Cases in Equity*, *Hare & Wallace's notes*, *p.* 645. *Howard vs. Moore*, 4 *Sneed*, (*Tenn.*,) 317. *Chance vs. Beall*, 20 *Geo.*, 143.

It was contended below by the defendant, Forbes, and it is presumed will be urged before this tribunal, that the specific performance of this contract should not be decreed for the five following reasons :—

1st. Because Mr. Myers in his life-time *waived and abandoned* the contract.

2nd. Because, if not abandoned, the remedy is at law by action for a breach of contract and a Court of Equity has no jurisdiction to grant relief.

3rd. Because of *laches* on the part of complainant.

4th. Because Myers agreed to lease one lot to Hammill and did execute a lease to him.

5th. Because the contract is imperfect in not stating the term for which the leases were to continue.

1st. It was contended, *seriously*, that Myers abandoned and waived this *written* contract for two reasons, first, because it is alleged in the answer, that Forbes did not get money whenever he called for it ; and secondly, because *nothing* was said about the lots at the final settlement on the 28th May, 1861. Mr. Forbes took it for granted the contract to lease was abandoned. As to the first reason, it is submitted there is no evidence to sustain it, and if there were it would amount to nothing—there was no obligation on Myers' part to pay before the work was performed in full. *Drummond vs. Burrell*, 13 *Wend.*, 308. *Ellicott vs. Peterson*, 4 *Md. Rep.*, 489.

As to the second reason, it is only necessary to refer to the testimony of Forbes' witness, Allen, to show that he never so supposed, but that he got out the work for those houses in June and July, 1861, just before he left the country. But it is submitted, that if Mr. Forbes did

take it for granted, because nothing was said on the subject, that therefore this written contract was abandoned, that would hardly in law be considered a waiver and abandonment on Myers' part.

2nd. The second question raised by defendant is the one on which the learned Judge below decided the case. It has already been considered under the appellant's first point. As to true test of jurisdiction see *Bolgiano vs. Cook*, 19 *Md. Rep.*, 394. It must be remembered too that an injunction was asked for and granted.

3rd. It is alleged that there has been laches on the part of the complainant and her testator, although the evidence shows that the original deed of Myers was given to Forbes "shortly after" the signing of the contract, on the 28th of November, 1860, to take to Thompson to have the leases prepared; that Myers and wife executed them early in 1861; that he demanded and received ground rent and taxes from Keyser, Forbes' agent, in January, 1862, (for rent due 1st of January, 1862,) demanded ground rent due 1st of July, 1862, in August of that year, which being refused, Mr. Myers, (as agent of complainant,) at once went to the record office to find the leases, discovered they were not there, found them at Mr. Thompson's office and immediately demanded their execution, which being refused the bill in this case was filed 8th of September, 1862, and it must be borne in mind that Forbes was in Europe from August, 1861, to September, 1862, and that Myers died in June, 1862. It is submitted that there was no laches on the part of Mr. Myers and his representatives, and that no case can be found in the books where the specific performance of a contract in relation to real estate was refused by a Court of Equity, on the ground of laches under such circumstances as these. On the contrary, at the first moment that Forbes showed to the complainant his true character and designs, the utmost

haste was used to compel the performance of this contract. *Saunders and Wife vs. Simpson,* 2 *H. & J.,* 81. *Story's Eq. Jurisp.,* secs. 747, 748, 775.

4th. It is contended that Forbes is relieved from taking more than one lot, as Myers agreed to execute a lease to Hammill for one lot, and that although no such man ever presented himself to Myers or any of his representatives, and was not produced as a witness by the defendant, and in fact is not shown to exist; and although it must be conceded that Myers could not force Hammill to take the lots, nor could Hammill force Myers' representatives to make a lease to him, yet it is contended Forbes is released. It was clearly *nudum pactum.* Void for want of consideration. Wanting all mutuality. It was merely an act of kindness on the part of Myers, by which he is not legally bound, and of which Forbes, now that he is dead, is seeking to take advantage. *Black vs, Cord,* 2 *H. & J.,* 100. *Tubman vs. Anderson,* 4 *H. & McH.,* 357, *see Opinion of Chancellor, p.* 359.

5th. The last objection is that the contract is imperfect or uncertain in not stating the term for which the lease was to continue. Is this so?

"In construing written instruments the first and chief object is to ascertain the meaning of the parties, and the intention as expressed, unless contravening some rule of law, is to be carried into effect." *Williamson et al. vs. Mayor, &c.,* 19 *Md. Rep.,* 416, 417. *Varnum, &c., vs. Thruston,* 17 *Md. Rep.,* 496 *and* 500.

The evidence of Mr. Thompson, the conveyancer of both parties, shows that the contract was perfectly clear and certain to him. He says he prepared "two leases in accordance with the stipulations it contained," such as are usual in the city of Baltimore, that is, for ninety-nine years, and renewable forever. But what is the difference if it be for ninety-nine years, renewable, or for nine hun-

dred and ninety-nine, or forever. They were, as the contract on its face shows, to be perpetual leases, and the evidence of Mr. Thompson, as an expert, merely shows what is considered a perpetual lease in the city of Baltimore, that is for ninety-nine years, renewable forever, with the covenants usual in such a lease. The contract, however, on its face, clearly contemplates and means a perpetual lease. The rent is fixed at twenty dollars "annually." Forbes to have the right to buy out in three years. The rent payable semi-annually. How could the contract be more specific? In no way unless it contained all the specifications of the lease for which it provides. *Marsh vs. Milligan*, 3 *Jurist, N. S.*, 979. *Great Northern Railway Company vs. Manchester, Sheffield and L. Railway Company*, 5 *De Gex & Smales*, 138. *Sanderson vs. Cockermouth & W. Railway Company*, 11 *Beavan*, 497. *Fry on the Specific Performance of Contracts*, 100 *Law Library*, secs. 204, 54. *Gordon vs. Trevelyan*, 1 *Price*, 64. *Colerick et. al vs. Hooper*, 3 *Indiana*, 316.

*Wm. F. Frick* for the appellee.

The case may be considered under two aspects:

1st. As it appears on the face of the bill alone.

2nd. As presented on the bill, answer and proofs.

I. It is well settled that the complainant must recover upon the case made by his bill, and that the defendant, although he answers it, may at the hearing object that the case made in the bill does not entitle the party to the relief he asks. *Chambers vs. Chalmers et al.*, 3 *G. & J.*, 438.

The bill is devoid of equity on various grounds:

1. There was no equitable ground on which to enjoin the defendant's collection by law of a debt admitted to be due to him. The defendant contracted to do certain

work, for which he was to be paid a stipulated price. It is conceded that he did the work, and was entitled under the contract to the sum which the complainant unjustly withheld, and which the defendant sought to recover at law. The alleged contract to lease the lots, though appearing to be made in consideration of the other contract, was a separate and independent agreement, and payment for the work was not made dependent by the terms of any part of either contract upon the acceptance of the leases.

This point is made more clear by the fact shown in evidence, that the complainant finally settled with the defendant on the first contract, and gave his notes for the balance due without requiring execution of the second contract.

2. There is not in the contract itself sought to be enforced, the essential ingredient of mutuality, so as to entitle the party not bound by it to a decree for its specific performance; it was a contract required to be in writing under the statute of frauds, and signed only by Forbes.

There was no legal obligation upon Myers to give the leases or to perform the contract. *Lawrenson vs. Butler*, 1 *Sch. and Lef.*, 18. See also *Armiger vs. Clarke, Bunbury,* 111. *Bromley vs. Jeffries,* 2 *Vernon,* 415.

The doctrine in these cases is fully adopted and expounded by Chancellor KENT in *Benedict vs. Lynch,* 1 *Johns. Ch. Rep.*, 373. It is also fully recognized and adopted as the law of this State, in the case of *Geiger vs. Green,* 4 *Gill,* 476. Also in *Duvall vs. Myers,* 2 *Md. Ch. Dec.*, 404, 405.

The complainant's right to relief does not depend upon his subsequent offer to perform the contract on his part, when events may have rendered it advantageous for him to do so, but upon its originally obligatory character. It would not be equity, says Lord REDESDALE, " that a party

not originally bound by the agreement should be permitted at his option to compel the other party to perform, when, if the advantage was the other way, he could not himself be coerced into performance." *See also Benedict vs. Lynch*, 1 *Johns. Ch. Rep.*, 370. *Beard vs. Linthicum*, 1 *Md. Ch. Dec.*, 350. *Tyson vs. Watts, Id.*, 15–17. *Moore vs. Randolph*, 6 *Leigh*, 175.

3. This is an application for a specific execution of an alleged agreement; in such case it is not only necessary to prove that an agreement was made, but its terms must be so clearly and fully shown that the Court must be certain of carrying into effect the contract made by the parties. *Stoddart vs. Bowie*, 5 *Md. Rep.*, 28. 2 *vol. Story's Eq. Jur.*, sec. 767.

It may be added here that no attempt has been made by proofs to explain this document, and it is settled that this could not be done, for the distinction is well established between the right of a defendant resisting specific performance and a complainant seeking it, to go into parol evidence, to aid his case upon a written agreement. See subject treated at large in 2 *White and Tudor's Leading Cases*, 355. *Hare & Wallace's notes to Woollam vs. Hearn*, 2 *Story's Eq. Jur.*, secs. 769, 770.

In addition to the other uncertainties and imperfections of the paper, there is one other conclusive objection to a decree for its specific performance, and that is to be found in the fact that it does not specify the term for which the lease is to be made. It stipulates that the rent is to commence 1st of January, 1861, and is to be bought out within three years; but whether the lease is to be for three years, or thirty years, or three hundred years, is not stated, and cannot possibly be made out, except by conjecture and speculation.

The cases on this point are conclusive: *See Fry on Specific Performance of Contracts*, (98 *Law Library, p.* 88,)

*secs.* 221, 222. *Clinan vs. Cooke,* 1 *Sch. & Lef.,* 22. *Gordon vs. Trevelyan,* 1 *Price,* 64 *to* 71. *Blore vs. Sutton,* 3 *Merrivale,* 237. *Lord Ormond vs. Anderson,* 2 *Ball & Beatty,* 363. *Cox vs. Middleton,* 2 *Drewry,* 209. *Wheeler vs. D'Esterre,* 2 *Dow,* 359. And see as directly to this point, *Allen vs. Burke,* 2 *Md. Ch. Dec.,* 538. *Parkhurst vs. Van. Courtland,* 1 *Johns. Ch. Rep.,* 273. *Abeal vs. Radcliff,* 13 *Johns. Ch. Rep.,* 299, 300. *Jordan vs. Fay,* 40 *Me. Rep.,* 130. *See also* 5 *Jones' Eq. Rep.,* (*N. C.*) 154.

4. Another objection to the equity of the bill is that, from the nature of the case, the complainant has adequate relief at law. 2 *Story's Eq. Jur., secs.* 717, 742, 746. *Fry on Specific Performance,* p. 34, *sec. 14, referring to Clayton vs. Illingworth,* 10 *Hare,* 451.

II. Considering the case on the bill, answer and proofs, these further objections present themselves.

1. The complainant asks for an entire performance of the contract by Forbes; when it is shown that he consented, after the contract was made, to modify it by taking Patrick Hammill for one lot, and actually executed a lease to Hammill accordingly. By this act, the privity of contract between him and Forbes, as to that lot, was extinguished, and could not be afterwards restored without Forbes' consent. The case of *Shaw & Fisher in* 5 *De Gex, McNaughton & Gordon,* p. 596, is directly to this point. *See also Byrns vs. Rowceine,* 2 *Edwards' Ch. Rep.,* 447.

And in the uncertainty in which the record stands as to which lot was leased to Hammill, it would not be possible to designate, by a proper decree, the dimensions of the lot which should be accepted by Forbes, even if the Court, upon the present bill, without amendment, could pass a decree for partial relief.

2. The answer avers, and the proofs show, that when Myers settled with Forbes in May, 1861, he forced him by threats of litigation to vary the contract, and abandon to

some extent his plain rights thereunder.    And that when he compelled and completed this settlement, he took receipts in full from Forbes, under the contract; ignored the leases; made no demand on Forbes to execute them; and let the 1st July, 1861, pass by without making any demand on him, either to pay the rent then due under the contract, or to accept the leases.    This conduct on Myers' part, completely justified Forbes in then concluding that Myers had abandoned his claim on him, touching the leasing of the property, and he accordingly cancelled the bargain he had made for building on the lot, and a sale of the improvements, and let the materials lie by until both they and the lot had become depreciated in value.    Nearly two years from the making of the contract, and more than a year from the period of the final settlement between them, were allowed to pass before a demand was made to execute the leases.    These facts bring the case within that numerous class, wherein relief is denied, because of the *laches* of the complainant, when, as Lord ALVANLY says, "he has not shown himself ready, desirous, prompt and eager for relief," or in the language of Lord CRANWORTH, "he has not sought relief as promptly as the nature of the case will admit."    This rule is especially applied to cases where the lapse of time has induced a change of circumstances, to the disadvantage of the defendant.    *See Fry on Specific Performance*, (98 *Law Lib.*, 218,) secs. 730, 731, 732, 735, 736.    *Ead vs. Williams*, 4 *De Gex, McNaughton & Gordon*, 691.    *Lloyd vs. Collett*, 4 *Brown's Ch. Rep.*, 469.    *Southcomb vs. Bishop of Exeter*, 6 *Hare*, 218.    31 *Eng. Ch. Rep.*, and notes of Editor in that case. And especially does this rule apply where the contract is *unilateral*.    Any delay in the party in whose favor the contract is binding is looked at with unusual strictness. And that is this case.    *Fry on Spec. Performance, sec.*

733, *p.* 218, *and sec.* 721, *p.* 216. *Benedict vs. Lynch*, 1 *Johns. Ch. Rep*, 373.

BARTOL, J., delivered the opinion of this Court.

The bill in this case was filed by the appellant to compel the specific performance of a contract made by the appellee with the complainant's testator, and also to enjoin the appellee from further proceedings under a *scire facias*, on a mechanic's lien. The contract is in these words:

" I hereby agree to do the carpenter's work on the warehouse about to be built for Charles Myers, on the corner of South street and Exchange Place, at sixty-one *per cent.* off carpenter's full measurement price, the work to be approved of by the architect.

" In consideration of the above contract, I hereby agree to lease of Charles Myers, the following lots, that is, all that lot of ground beginning for the same on the east side of Spring street, at the north-west corner of a two story brick house, said lot belonging to Alexander Lowry, and running thence north-westerly 26 feet, thence easterly parallel with Madison street, 60 feet, thence southerly parallel with Spring street 26 feet, thence westwardly parallel with Madison street 60 feet to the place of beginning. The above to be divided into two lots, and the price to be $20.00 for each lot annually, payable semi-annually on the first days of January and July, the rent to commence on the 1st day of January, 1861—said Forbes to have the privilege of buying out said ground rent within three years, at the rate of six *per cent. per annum.*

" JAMES S. FORBES.

*Baltimore, Nov.* 28, 1860.

Endorsed:—PATRICK HAMMILL, 1 lot.
Witness :—C. H. MYERS."

39    v. 24.

It appears by the proof that the contract for doing the carpenter's work on the warehouse was fully performed by Forbes, the appellee, and after much altercation and dispute between him and Myers, the appellant's testator, with regard to the price of the work, a final settlement of the dispute was made between them on the 28th day of May, 1861, when Myers gave his two notes to Forbes, one for $500, payable the first of October, 1861, and the other for $468.03, at six months, and a receipt was given by Forbes declaring the same to be, "when paid, in full of all demands against Myers for carpenter's work, materials furnished, &c., on the warehouse.

A claim of lien was filed in the Clerk's office by Forbes, and a balance of $403.69 remaining unpaid, a *scire facias* was issued for its collection, and to restrain further proceedings thereon, was one object of the bill in this case.

The equity of the bill rests upon the alleged failure and refusal of the appellant to perform his agreement to lease the lot of ground on Spring street, and the bill prays for a decree requiring a specific performance of the contract to lease.

Objection was taken below to the jurisdiction of the Court, and the Circuit Court, entertaining the opinion that this objection was well taken, on that ground dissolved the injunction and dismissed the bill.

In the opinion of this Court, if the case of the complainant were free from difficulty in other respects, and depended alone on the decision of the question of jurisdiction, the decree of the Circuit Court would have to be reversed.

The case of *Smoot et al. vs. Rea and Andrews*, 19 *Md. Rep.*, 398, *and Mercer vs. Howser*, (see appendix,) decided at the last term, are conclusive of this question.

In our opinion the evidence in the case fails to sustain the defence on the ground either of waiver and abandon-

ment of the contract on the part of the appellant's testator, or of *laches* and delay as contended for the appellee.

The insuperable difficulty in granting the relief prayed consists, in our opinion, in the want of definiteness and certainty in the terms of the contract sought to be enforced. In such a case, to repeat the language of this Court, in *Stoddert vs. Bowie,* 5 *Md. Rep.,* 28, "it is not only necessary to prove that an agreement was made, but the terms of the agreement must be so clearly and fully shown that the Court can have no difficulty in knowing what the terms are, so as to be certain of carrying into effect the contract made by the parties. Passing a decree for specific execution upon proof short of this, instead of executing the agreement of the parties, would be making one for them, which the Court certainly has no authority to do." See also 2 *Story's Eq. Jur.,* sec. 767.

In this case the contract is altogether silent as to the term for which the intended lease was to be made. The term or duration of a lease is an essential part of it, and in the absence of any stipulation in that respect a Court of Equity cannot decree a specific performance of a contract to lease. In *Howard vs. Carpenter,* 11 *Md. Rep.,* 278, it was held that without a stipulation fixing the rent reserved, a contract to lease could not be specifically enforced in equity. But the length of the term is just as necessary a part of a lease as the rate of rent reserved.

In our opinion this defect in the contract has not been removed by anything disclosed in the proof.

Two leases for ninety-nine years, renewable, were prepared by A. W. Thompson, the conveyancer, and signed by Myers and wife, but were not delivered to the appellee; nor does it appear from the testimony that he either directed the leases to be drawn in those terms, or

that he ever saw them or knew their contents, or that they had been executed by Myers until long afterwards, when, according to the evidence of A. W. Thompson, he remarked "that the drawing of the leases was unauthorized by him."

This witness states that according to his recollection the contract was left with him by Charles Myers, deceased. The witness, Charles H. Myers, states that his father told Forbes to leave the original deed with A. W. Thompson, in order to have the leases drawn. It does not appear, however, that either the original deed or contract was taken to Thompson by Forbes, or that he gave any instructions to Thompson with regard to the preparation of the leases. These seem to have been drawn by Thompson, either by the direction of Myers or without any particular instructions as to the terms; and there is, in our opinion, not such clear and satisfactory evidence to connect the appellee with the preparation and execution of the leases, as to give to those acts the force of a part performance of the agreement, so as to take it out of the operation of the statute of frauds, or to supply the defect in the terms and provisions of the agreement, so that a Court of Equity may decree its specific performance, even if it were possible to supply such a defect in the written paper by parol evidence.

Considering that the agreement sought to be specifically executed in this case is vague, uncertain and indefinite in its terms, and incapable of being specifically enforced, the decree of the Circuit Court must for that reason be affirmed without costs to the appellee.

*Decree affirmed.*

(Decided May 15th, 1866.)